[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of marriage on the ground of irretrievable breakdown. She also sought alimony and other relief as on file. The defendant, a practicing attorney, appeared pro se, and filed an answer admitting the allegations of the complaint. Each spouse testified, filed a financial affidavit, written proposed orders and claims for relief. The plaintiff made oral judgment.
From the evidence, I find as follows. The parties married March 15, 1969, in New Haven, Connecticut. The wife has resided continuously in this state for more than one year before the filing of the complaint. There are no minor children issue of the marriage. Two children were born to the wife since the date of the marriage; both have reached majority.
All statutory stays have expired and the court has CT Page 4225-E jurisdiction.
The wife is 48 years old, has graduated college and holds a postgraduate degree in elementary education. She experiences depression and anxiety, but has not missed any time from her employment as a result of these conditions, and is otherwise in good health. She is a licensed and tenured second grade teacher in the Middletown school system and has been employed there for the past 11 years. She has health insurance and pension benefits available through her employment. She worked in part time and substitute teaching jobs until about 1984-85, when she began teaching full time. She now earns $785 per week gross, $505[1] per week net. She was the principal homemaker and child care giver during the marriage.
The husband is 49 years old, a college graduate with a law degree, and has been a practicing attorney in this state as an employee with the same law firm since 1973. He is in good health, except for high blood pressure, which does not appear to impair his ability to work. He earns $1,000 per week gross, and $585 per week net, after mandatory deductions, an IRS levy of $75 per week, and an auto lease payment of $86 per week. His health insurance premium, which is not actually being paid by him, was added back to the $521 weekly net reported on his financial affidavit. His earnings in prior years have been higher; he now has no employment related retirement, investment or stock savings plans. He has health insurance coverage through the wife's employment. He also receives a gasoline allowance of $35 per week. He works mainly in the area of real estate, commercial and bankruptcy law.
The marriage produced two adult sons who now live with the mother in the marital dwelling. The older child graduated college, the younger desires to continue on to medical school. The parties enjoyed a middle class lifestyle. They went on skiing and other vacation trips, and bought a time share (condo) in Florida. They spent beyond their means. However, from outward appearances, even though they enjoyed separate interests, they had a fairly successful marriage, at least until the defendant met a woman with whom he developed a sexual relationship. He has had two children by her, lives with her and the children, and intends to marry her, although no date has yet been set.
The parties separated in August, 1993, the marriage CT Page 4225-F has clearly irretrievably broken down, and the major responsibility for its destruction must lie squarely with the defendant husband.
The couple accumulated substantial assets during their marriage. The financial affidavits report the jointly owned marital dwelling at 23 Cedar Street, Middletown, Connecticut, which I find has a value of $135,000, an outstanding mortgage balance of $130,000, and modest equity of $5,000, without accounting for IRS liens discussed below. The house was purchased for $47,000; the down payment of $11,000 came from the wife's inheritance. They also have a time share worth $16,000 also subject to the IRS liens. They hold life insurance without cash value, some household furnishings, for which valuations are not disclosed by the wife; in contrast, the husband values his camping and camera equipment and his household items at $1,000.
The husband also has a 1994 motor vehicle with no equity. The wife has a 1985 Chevrolet worth $1,860, nominal savings, an annuity of $13,332 and her pension plan of $23,485.
Against these assets, she reports liabilities of $167,716 of which $3,978 are attorney's fees and $3,644 derived from a student loan. The husband reports $336,056 in liabilities, which include $188,411 for IRS assessments and liens, also listed in the wife's disclosed liabilities.
Other major liabilities the husband lists are a $40,000 personal loan and $90,000 due to a surveyor which arose out of a failed land development venture. It appears that the $90,000 debt is no longer due. The Internal Revenue Service liens have their genesis in 1990 when the husband withdrew slightly in excess of $187,000 from his employer's profit sharing and pension plans. No income taxes or surrender charges were withheld at the source, and the amounts realized were not reported as income on the parties' 1990 federal income tax return,[2] nor were taxes paid. This resulted in the imposition of $116,604 in taxes plus $37,220 in penalties and interest due the IRS as of September 1995. According to the husband, this generated an audit of the parties' returns for five other tax years, resulting in additional taxes, interest and penalties due. The husband has reached an `accommodation' with the IRS and is paying $75 per week toward its assessment by way of wage garnishment. The wife has retained tax counsel to seek exoneration under the `innocent spouse' rule. The husband CT Page 4225-G claims some $24,000 of the withdrawn pension profit sharing funds went to reimburse his employer for a costly error, which I find credible. I do not find credible his claim that $60,000 of said funds was given to the wife, and that substantial sums went into renovation and refurbishing of the family home.
I also find not credible his explanation of the disbursement of the remainder of these funds or of the loan from his client, Lupien, or of the $53,000 net proceeds secured by a refinancing[3] of the marital dwelling. No documentation or other corroboration was provided to show clearly how, when and where sums in excess of $250,000 were dissipated. Nor was there any satisfactory explanation for the withdrawal of the entire profit and pension funds.
To the husband's credit, he conceded that he is solely responsible for the federal income tax problems the parties have found themselves in, and for the breakdown of the parties' marriage.
The husband has consistently earned greater annual incomes than the wife throughout the marriage, although during the past four years the gap between their gross incomes has narrowed. They have equal employability; the husband has superior earnings and earning capacity and vocational skills than she has, and thus, has greater opportunity to acquire capital assets and income in the future than she has.
The wife has made greater nonmonetary contributions to the marriage than the husband; while the husband's monetary contributions to the marriage were larger than the wife's, his financial mismanagement and extramarital activities have brought them to the brink of financial ruin. It is inconceivable that an attorney, highly experienced in the areas of commercial and tax law, albeit overextended by a large number of extracurricular and time consuming activities, including member and chairman of the Town Board of Education for over 18 years and participation in other civic organizations, could have so adversely affected his own economic security and that of his family, so that all are now in financial straits.
The husband's female companion earns $24,000 per annum and shares in his household expenses.
There is an arrearage of $9,060 due the plaintiff from CT Page 4225-H the defendant on account of a pendente lite alimony order.
The court has considered all of the criteria in General Statutes §§ 46b-62, 46b-81 and 46b-82 in the determination of the financial awards set forth. I have also considered the taxable implications and consequences of said awards and the defendant's ability to pay. Accordingly, judgment may enter dissolving the marriage on the ground of irretrievable breakdown. The following orders shall also enter.
(1) The defendant husband shall pay to the plaintiff wife, as periodic alimony, the sum of $150 per week, which shall terminate upon the death of either party, the wife's remarriage or pursuant to the provisions of § 46b-86(b). He shall also pay $25 per week on the arrearage of $9,060 until paid. I find that the wife is in need of continuing support, and said alimony is actually in the nature of support, and shall not be affected by a discharge in bankruptcy. Said payments shall be secured by immediate wage garnishment.
(2) All right, title and interest in the following property, real and personal, is vested in and transferred to the wife:
(a) The marital dwelling at 23 Cedar Street, Middletown, Connecticut, subject to the mortgage, which she shall pay and save him harmless; (b) the time share in Florida, which she shall sell forthwith; the net proceeds after deduction from the sales price of the reasonable, ordinary and customary expenses of the sale, shall be applied to the federal tax liens; (c) the wife's annuity and pension, 1985 automobile and savings account; (d) all of the tangible personal property in the marital dwelling, except as set forth below.
(3) The defendant is ordered to maintain, so long as he is obligated to pay alimony hereunder, and any arrearages, at his sole expense, the two Connecticut National Life life insurance policies as described in Exhibit 6, and one half of the proceeds of his job related life insurance policy and irrevocably designate the plaintiff wife as beneficiary thereunder. He shall execute and deliver an authorization to her so that she may from time to time determine the status and good standing of said policy.
(4) There is assigned to the defendant husband the CT Page 4225-I following items of personal property: one working Fedders air conditioner; his Old Town canoe and accessories; his motor vehicle; his black storage box and 15 percent of the family photos, to be designated by the defendant. The photos shall be selected at plaintiff's counsel's office.
(5) The defendant shall indemnify and save the plaintiff harmless from all of the IRS liens, taxes, interest and penalties for the tax years 1987-1992, inclusive. A failure by him to do so shall be deemed a substantial change in circumstances, entitling the plaintiff to seek a modification in her alimony award.
(6) The defendant shall pay to the plaintiff, toward her attorney's fees, the sum of $1,000, by equal weekly payments of $10, also secured by immediate wage garnishment. A denial of an attorney s fee award would impair or undermine the other financial awards herein.
(7) The plaintiff shall cooperate with any claims of the defendant to remain a covered beneficiary under her employment related health insurance at his sole expense, under COBRA or other applicable law.
(8) All documents necessary or incidental to the effectuation of these orders shall be completed and exchanged, and the personal property transferred, within thirty (30) days hereof.
Teller, J.